# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Marshall's Electric, Inc. ) ASBCA No. 59749
)
Under Contract No. FA4613-13-C-0011 )

APPEARANCE FOR THE APPELLANT: Ms. Cynthia L. Marshall
Secretary/Treasurer

APPEARANCES FOR THE GOVERNMENT: Col Matthew J. Mulbarger, USAF
Air Force Chief Trial Attorney
Lawrence M. Anderson, Esq.
Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE DELMAN

In this appeal Marshall's Electric, Inc., (appellant or MEI) disputes the termination of its contract for default by the Department of the Air Force (government). The parties agreed to waive an oral hearing and to present their positions on the record under Board Rule 11. We have jurisdiction under the Contract Disputes Act, 41 U.S.C. §§ 7101-7109. For reasons stated below, we deny the appeal.

## FINDINGS OF FACT

1. On 27 June 2013, the government issued a solicitation for Repair Fire Protection/Detection Systems, Weapons Storage Area, at F.E. Warren Air Force Base, Wyoming (Item 0001). The project was targeted as a 100% small business set-aside. (Compl., ex. 1)

2. The solicitation and the eventual contract included FAR 52.228-15, PERFORMANCE AND PAYMENT BONDS—CONSTRUCTION (OCT 2010). Block 12 of Standard Form 1442, "Solicitation, Offer, and Award," provided that these bonds were to be furnished to the government within 20 calendar days of award. The contract also contained FAR 52.249-10, DEFAULT (FIXED-PRICE CONSTRUCTION) (APR 1984). (Compl., ex. 1 at 13)

3. The government awarded Contract No. FA4613-13-C-0011 to appellant on 25 September 2013. Accordingly, appellant was to furnish the bonds to the

government no later than 15 October 2013. Appellant was to complete the project within 195 calendar days after receipt of notice to proceed. (Compl., ex. 6)*

4. We take judicial notice that between 1 October 2013 and 16 October 2013, there was a federal government shutdown. As a result of this shutdown, the offices of the Small Business Administration (SBA) were closed. According to appellant, this closure impacted the processing of its application for SBA bond guarantees (*see generally* 13 C.F.R. § 115, Surety Bond Guarantee). However the record shows that appellant did not request the bonds from its surety and execute the necessary SBA fee authorization form until 11 November 2013 (compl., ex. 9), nearly one month after the government reopened and nearly one month after bonds were required to be furnished to the government.

5. On 13 November 2013, MEI was notified by its surety that its bond request was denied due to outstanding claims related to its work as a subcontractor on a contract between the U.S. Army Corps of Engineers and Graham Construction Services at Minot Air Force Base, North Dakota (compl., exs. 11, 12). Appellant advised the government of this matter by email dated 14 November 2013, stating in pertinent part as follows:

> Until we can get this project closed out our bonding is on hold, which directly impacts our ability to bond this project. We apologize for the disruption this may cause for this project.

(Compl., ex. 12 at 2)

6. By memorandum dated 24 December 2013, entitled in part "Potential Termination for Default," the contracting officer (CO) issued a notice to appellant, in the nature of a notice to show cause, as follows:

> 1. You are hereby notified that, since you have failed to provide bonding of subject contract in accordance with the contract terms (20 days following contract award), the Government is considering terminating the contract for default in accordance with FAR 52.249-10 "Default

---

* The contract at Section F—Deliveries or Performance provided for a "winter exclusion" period prohibiting certain outdoor work between 1 October 2013 and 30 May 2014 (R4, tab 1 at 7), absent written approval of the contracting officer. Thus the contract completion date was 9 December 2014 (R4, tab 8). Neither party contends however that this exclusionary period had any bearing on the default termination.

2

(Fixed-Price Construction)." Pending a final decision in
this matter, it will be necessary to determine whether your
failure to perform arose out of causes beyond your control
and without fault or negligence on your part. Accordingly,
you are hereby afforded the opportunity to present, in
writing, any facts bearing on the question to the
undersigned within thirty calendar (30) days after receipt
of this notice.

(Compl., ex. 15)

7. Appellant replied to this notice by letter dated 7 January 2014. Appellant explained the nature of its problems on the Minot job and its attempt to obtain bonding on the subject contract. Appellant also stated as follows:

Unfortunately, the government shutdown in October
greatly impacted our bonding. If we were able to submit
our bonding request the first or second week of October, it
would have been approved and the [subject] project would
not have been impacted by the USACE Minot AFB
project.

....

In closing, we humbly request a 45 day grace period to
obtain bonding. The USACE Minot AFB project will be
completely closed out and all vendors/suppliers will be
paid in full with final lien releases issued. We will await
your decision.

(R4, tab 6 at 24-25) Appellant has not provided any evidence to show that if it had submitted its bonding request in early October 2013, the bond request would have been approved and would not have been impacted by the Minot job.

8. The government allowed the next 45 days to pass and did not default terminate the contract. Appellant did not obtain bonding within these 45 days, nor was the Minot project closed within these 45 days, nor was appellant able to represent to the government when the Minot project would close and when it would obtain payment and performance bonds for this project.

9. By memorandum to appellant dated 15 April 2014, entitled "Show Cause," the CO again notified appellant of its failure to provide bonding as required by the

3

contract and that the government was considering a termination for default. The government gave appellant another opportunity to provide evidence excusing its failure to perform. (Compl., ex. 18)

10. Appellant replied to the show cause notice by letter dated 28 April 2014. Appellant restated its attempt to obtain bonding, the impact of the government shutdown and its difficulties on the Minot job. Appellant stated as follows:

> With reference to the Minot, North Dakota project, we were a subcontractor and suffered losses directly relating to one of our direct subcontractor's failure. *With this subcontractor we did not require bonding,* [sic] *if we would have required bonding this would have mitigated the losses we are now experiencing.* The subcontractor failure has resulted in a lawsuit which is pending.
>
> ....
>
> We respectfully request that you consider not terminating for default. Many of the factors which led to our inability to produce bonding for this project were not within our control. We were prepare [sic] to perform this contract but due the mitigating factors outlined above were unable to obtain the necessary bonding.

(R4, tab 6 at 6-7) (Emphasis added)

11. By email dated 29 May 2014, the government sought an update from appellant on the bonding issue. Appellant replied by email on the same day, as follows:

> I apologize for my delay in responding. We are still working to get the Minot project closed out. Graham Construction [the prime contractor] is refusing to close out this project until the pending lawsuit with our failed subcontractor is resolved although Graham is not and never has been named in the suit. At this point in time, we are closing out other "pre-bonded" projects and our bonding company is stepping back until Minot can be completely closed out.

4

> We firmly believe that if the government shut down would not have occurred we could have secured bonding for your project before the Minot project impacted our bonding.

(R4, tab 6 at 5)

12. By memorandum dated 22 September 2014, the government issued to appellant a "Notice of Default Termination." This notice stated in part as follows:

> Your inability to receive bonding on the project prevented the government from issuing a notice to proceed, and the contract terms cannot be fulfilled.
>
> 3. You received your copy of the contract on or about 25 September 2013, thereby establishing 9 December 2014 as the delivery date for Item 0001, and a deadline of 20 days from contract award to provide the necessary bonding.
>
> 4. After due consideration of all the pertinent facts, the undersigned Termination Contracting Officer hereby finds and determines that you have failed to complete the requirements of the subject contract within the time required by the terms thereof and that said failure did not arise out of causes beyond your control or without fault or negligence on your part. Therefore, you are hereby notified that the Government, by this written notice, terminates subject contract, including your right to proceed with performance there under [sic], in its entirety for default in accordance with Federal Acquisition Regulation 52.249-10 "Default (Fixed-Price Construction)" April 1984, effective upon receipt of this notice.

(R4, tab 8)

13. Appellant filed a timely notice of appeal from this termination decision on 15 December 2014.

## DECISION

The government has the burden to prove that its default termination of this contract was justified. *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759 (Fed. Cir. 1987). We believe that the government has met its burden here.

Under paragraph (a) of the Default clause of the contract, FAR 52.249-10, the government may default the contractor if the contractor "fails to prosecute the work...with the diligence that will insure its completing within the time specified in this contract." A contractor may not start work until it furnishes its bonds or other acceptable alternative payment protections to the government. FAR 28.102-1(c). Appellant failed to furnish the required performance and payment bonds and failed to provide a date by which it would be able to do so. Perforce, it was unable to advise the government when it would be able to start the work on this project. This was tantamount to appellant's failure to prosecute the work with the diligence to insure timely completion, thereby establishing a ground for default in accordance with paragraph (a) of the Default clause.

The burden then shifts to appellant to show under paragraph (b) of the Default clause that the default was excusable, i.e., that the contractor's delay arose from "unforeseeable causes beyond the control and without the fault or negligence of the contractor." Appellant points to the U.S. Army Corps of Engineers and/or the prime contractor on the Minot project as being responsible for its predicament. However, appellant's inability to obtain bonding on this contract was due to a dispute with a lower tier subcontractor on the Minot project that ended up in litigation and delayed the close-out of the project and impacted its bonding capacity (findings 5, 10). In correspondence with the government, appellant stated that it did not require bonding with this subcontractor on the Minot project and if it would have done so, it would have been able to mitigate its losses (finding 10). Given these facts, appellant has not shown that its inability to obtain bonding here was an unforeseeable cause that was beyond its control and without its fault or negligence.

We have held a default excusable, however, where it has been shown that the government's wrongful action against a contractor on one contract was the cause of its financial difficulties on other contracts. *R-D Mounts, Inc.*, ASBCA No. 14827 *et al.*, 71-1 BCA ¶ 8643, *recon. denied*, 71-1 BCA ¶ 8725; *see generally* JOHN CIBINIC, JR., RALPH C. NASH, JR., ADMINISTRATION OF GOVERNMENT CONTRACTS 571 (3rd ed. 1995) (and cases collected). However, in *Mounts* the government acted wrongfully under an earlier contract with the contractor that subsequently impacted that contractor's other contracts with the government. Here, the earlier Minot contract was not a contract between the government and appellant. Appellant was a subcontractor on the Minot project (finding 10). The government's contractual duties flowed to the prime contractor on the Minot project, not to appellant. Appellant has failed to

6

establish a reasonable connection between any government violation of the prime contract at Minot, its flow-down effect upon appellant as a subcontractor and its inability to secure bonding here.

Appellant also contends that its inability to secure bonding was attributable to SBA administrative delay in processing its application for SBA bond guarantees resulting from the government shutdown. Appellant's application was not timely filed; it was filed on 11 November 2013, roughly 45 days after award, and almost a month after the government reopened and nearly a month after the bonds were required to be furnished to the government (finding 4). Appellant does not provide any evidence linking any SBA administrative delay with the disputes on the Minot job, nor does it provide any evidence to support the proposition that its bonding request would have been approved absent the government shutdown.

We have considered appellant's remaining arguments but they are not persuasive. Appellant has not shown that its default on this contract was excusable. Accordingly, we find that the government was justified in terminating this contract for default under the Default clause of the contract. In addition, a contractor's failure to provide performance and payment bonds is a breach of a condition that can support a default termination. *Ruffin's A-1 Contracting, Inc.*, ASBCA No. 38343, 90-3 BCA ¶ 23,243 at 116,626 (and cases cited). This is a separate and distinct ground for default termination.

## CONCLUSION

The government has shown that its default termination of this contract was justified. We deny the appeal.

Dated: 7 March 2016

JACK DELMAN
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

7

I concur

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59749, Appeal of Marshall's Electric, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

8